**MADISON RIVER MANAGEMENT COMPANY, Plaintiff,**

v.

**BUSINESS MANAGEMENT SOFT-WARE CORPORATION, a/k/a BMS, Defendant.**

No. 1:03 CV 00379.

United States District Court, M.D. North Carolina.

Jan. 5, 2005.

Grady L. Shields, Lee Michael Whitman, Wyrick Robbins Yates & Ponton, L.L.P., Raleigh, NC, Malcolm H. Brooks, Laura A. Derouin, Holland & Knight, LLC, Chicago, IL, for Plaintiff.

George W. Trey Aycock, III, Coltrane Aycock & Overfield, PLLC, Greensboro, NC, Kenneth E. Peck, Bushell & Peck, L.L.C., Denver, CO, Richard P. Earley, The Law Offices of Richard P. Earley, Hackettstown, NJ, for Defendant.

## MEMORANDUM OPINION AND ORDER

OSTEEN, District Judge.

Plaintiff Madison River Management Company ("Madison"), a corporation organized in Delaware with its principal place of business in North Carolina, brings this action against Defendant Business Management Software Corporation ("BMS"), formerly known as BMS Corporation, a corporation organized in Delaware with its principal place of business in Denver, Colorado. Plaintiff brought suit seeking a declaration that certain agreements between the parties were not void and remain in full force and effect, and that Plaintiff is not infringing Defendant's software copyright. Defendant counterclaimed for copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq. ("Copyright Act"), breach of contract, misrepresentation, conversion, Colorado statutory civil recovery for rights in stolen property, and unjust enrichment. This matter is now before the court on Plaintiff's Motion to Dismiss Claims 6–8, 10–19 of Defendant's Amended Counterclaim.[1] For the reasons set forth herein, Defendant's motion will be DENIED in part and GRANTED in part.

## I. BACKGROUND

The following facts are presented in the light most favorable to Defendant.[2]

---

1. Although Plaintiff moves for dismissal of counts 10–19, there is no seventeenth claim for relief because BMS misnumbered its causes of action in the amended complaint.

2. In considering the motion currently before it, the court must construe the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d

Defendant BMS is a software company that designed, developed, and copyrighted a suite of computer applications specifically for the telecommunications industry called the Ticket Control System ("TCS"). The TCS program allows telecommunication companies to manage problems with their networks. The TCS suite includes "TCS Control," the core event manager, and four additional products: (1) "TCS Provide" for service provisioning; (2) "TCS Resolve" for trouble management; (3) "TCS Force" for workforce management; and (4) "TCS Satisfy" for customer care. BMS received a certificate of copyright registration for its TCS program in May 2000.

Employees of BMS customers connect remotely to the TCS program via their individual computers. To gain access to the TCS program, the customer's employees sign onto the TCS server computer using special software. When the connection is made, the employee's computer makes a temporary copy of the TCS program on its local hard drive, which exists only so long as the employee is signed onto the TCS server computer. BMS monitors and logs the number of concurrent connections made to its TCS server and bases its licensing fee on the number of concurrent connections used by the customer.

Plaintiff Madison is a telecommunications company that specializes in rural telephone services. In 2000, Madison and BMS entered into extensive discussions regarding the use of TCS software, including such subjects as licensing fees and the number of concurrent connections needed by Madison. On October 2, 2000, BMS and Madison signed a Software License Agreement ("Agreement") for the TCS software. Under the Agreement, Madison purchased 15 TCS Control licenses and 15 TCS Provide licenses for its Gulf Telephone Company ("Gulf") division.[3] The Agreement provided that Madison would pay for any actual usage exceeding the 15 licenses of TCS Control and TCS Provide.

In October 2001, Gulf began using the TCS Provide software. In February 2002, BMS informed Madison that Madison's usage of TCS Provide was exceeding the number of licenses it purchased under the Agreement. Madison explained to BMS that its excessive use was temporarily caused by the installation of an interface to its billing system and asked BMS not to bill for excessive use until the interface was installed. BMS agreed. In May 2002, Madison completed installation of its billing interface, but Madison's use was not reduced to the 15 concurrent connections it had licensed. Instead, Madison's use in May, after the interface installation, exceeded 80 concurrent connections. As a result of the excess use, Madison requested that BMS quote a price to Madison for an unlimited use license, also known as a site license.

Beginning August 1, 2002, Madison and BMS entered into discussions with the intent that Madison purchase an unlimited site license for the TCS software. Madison did not purchase the site license or any additional licenses, but continued its exces-

---

202 (1986); *Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994).

**3.** The Agreement was signed between BMS and Madison, but the licenses purchased by Madison were for several of its local telecommunications divisions. Under the Agreement, Gulf, an Alabama division of Madison, would receive 15 TCS Control licenses and 15 TCS Provide licenses. The Agreement also provided that 30 TCS Control licenses and 30 TCS Provide licenses would be granted to "Mebtel & Gallatin River," presumably one or more additional Madison divisions. (Compl. Ex. A. at 16.) This lawsuit, however, relates only to those licenses granted to Madison for use by Gulf.

sive use of the TCS software. BMS subsequently provided Madison with a notice of copyright infringement and invoices for the excessive use. In response, Madison invoked the dispute resolution provision in the Agreement. The parties then entered into negotiations to resolve Madison's overuse. During the negotiations, BMS again suggested that Madison purchase an unlimited site license and Madison agreed to conduct an evaluation of the costs and benefits of purchasing a site license. The parties then executed a First Amendment to the Software License Agreement ("First Amendment") and an Expanded License Letter of Intent ("Letter of Intent") to memorialize their negotiations.

On January 24, 2003, after repeated inquiries by BMS, Madison informed BMS that Madison would not purchase a site license from BMS. When BMS requested that Madison provide BMS a copy of its evaluation of the costs and benefits of purchasing a site license, Madison informed BMS that Madison had not prepared a written assessment. Madison also informed BMS that it had never conducted and never intended to conduct an analysis of replacing its current system with TCS products and had never intended to purchase a site license.

After further discussions between the parties broke down, Madison brought suit for declaratory judgment that the First Amendment and Letter of Intent were not void and remain in full force and effect and that Plaintiff is not infringing Defendant's software copyright. Defendant counterclaimed for copyright infringement, breach of contract, misrepresentation, conversion, Colorado statutory civil recovery for rights in stolen property, and unjust enrichment. Now before the court is Plaintiff's Motion to Dismiss Claims 6–8, 10–19 of Defendant's Amended Counterclaim.

## II. STANDARD OF REVIEW

■■■■■ A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings, but does not seek to resolve disputes surrounding the facts. *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). A court must determine only if the challenged pleading fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The issue is not whether the defendant will ultimately prevail on its claims, but whether it is entitled to offer evidence to support the claim. *Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989). A pleading "should not be dismissed for failure to state a claim unless it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The pleading must be "liberally construed" in the light most favorable to the nonmoving party and allegations made therein are taken as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969).

## III. ANALYSIS

Plaintiff moves for dismissal of Defendant's counterclaims on two grounds: (1) because certain state law counterclaims are preempted by the Copyright Act; and (2) because Defendant's counterclaims for misrepresentation have not been pleaded with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure("Rule 9(b)").

### A. Preemption of State Law Claims

Madison argues that BMS' counterclaims for breach of contract (claims 6–8), conversion (claims 13–16), Colorado statutory recovery of stolen property (claim 18),

and unjust enrichment (claim 19) are preempted by the Copyright Act.

■ Congress has specifically preempted all state law rights that are equivalent to those protected under federal copyright law. *See* 17 U.S.C. § 301(a). For preemption to apply, a two-prong test must be met: (1) the work must be "within the scope of the subject-matter of copyright as specified in 17 U.S.C. §§ 102, 103"; and (2) the "rights granted under state law must be equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *United States ex rel. Berge v. Board of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir.1997) (internal quotation marks omitted) (quoting *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229 (4th Cir.1993)).

The first prong of the preemption test is satisfied. Here, Madison's allegedly wrongful use of the TCS computer program underlies all of BMS's state law claims, and computer programs clearly fall within the subject matter of copyright. *See Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 659 (4th Cir.1993) (holding that rights in a computer program clearly come within subject matter of copyright); *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 434–35 (4th Cir.1986) (holding that computer programs are copyrightable).

The remaining prong, that of the nature of the right asserted, is a more complex issue. The court must determine whether the causes of action in BMS' counterclaims, as defined by either Colorado or

North Carolina common law,[4] are being asserted to protect rights that are equivalent to the rights protected by federal copyright law. In this determination, the court will apply Nimmer's oft-cited "extra-element" test for preemption:

[A] right which is 'equivalent to copyright' is one which is infringed by the mere act of reproduction, performance, distribution or display.... If under state law the act of reproduction, performance, distribution or display, ... will *in itself* infringe the state created right, then such right is preempted. *But if other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display*, in order to constitute a state created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no preemption.

*Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd.*, 243 F.Supp.2d 444, 449 (M.D.N.C.2003) (alteration in original) (quoting 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][3]).

■ The extra element of the state cause of action must be one which changes the nature of the action so that it is "qualitatively different" from a copyright infringement claim. *Wharton v. Columbia Pictures Indus., Inc.*, 907 F.Supp. 144, 145 (D.Md.1995) (citing *Rosciszewski*, 1 F.3d at 230). If, however, the purported extra element of the state law claim does not make it qualitatively different from a copy-

---

4. The parties disagree as to which law governs BMS' state law counterclaims. Although the Agreement provides it "shall be governed by and construed in accordance with the laws of the State of Colorado," (Compl. Ex. A ¶ 19.7), Madison argues that the Agreement's choice of law provision does not purport to control all aspects of the parties'—relationship. Thus, Madison asserts, North Carolina law should apply to BMS' state law claims.

However, Madison concedes that there is no meaningful conflict between Colorado and North Carolina law as to any claims now at issue. (Mem. Supp. Mot. Dismiss Claims 6–8, 10–19 of Am. Countercl. at 2–3.) The court agrees. Therefore, the court will not decide which state's laws apply, but will simply reference the applicable elements in both jurisdictions.

right infringement claim, the state law claim is preempted. Thus, the court must examine and compare the "constituent elements of a claim for copyright infringement and [the state law claim]." *Trandes*, 996 F.2d at 659–60. To establish copyright infringement, a party must prove ownership of a valid copyright and encroachment upon one of the exclusive rights the copyright conferred. *Avtec Sys., Inc. v. Peiffer*, 21 F.3d 568, 571 (4th Cir.1994). The exclusive rights conferred by a copyright are to reproduce the copyrighted work, prepare derivative works, distribute copies of the work, and perform or display the work publicly. 17 U.S.C. § 106.

### 1. Breach of Contract (Claims 6–8)

 To establish breach of contract under Colorado law, a plaintiff must prove: (1) the existence of a valid contract; (2) performance by the plaintiff or justification for nonperformance; (3) defendant's failure to perform the contract; and (4) damages. *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo.1992). In North Carolina, the elements are existence of a valid contract and breach of that contract. *Long v. Long*, 160 N.C.App. 664, 668, 588 S.E.2d 1, 4 (2003). Analyzing these claims, it is recognized that "[a]lthough the vast majority of contract claims will presumably survive scrutiny . . . nonetheless preemption should continue to strike down claims that, though denominated 'contract,' nonetheless complain directly about the reproduction of expressive materials." *Frontline Test Equip., Inc. v. Greenleaf Software, Inc.*, 10 F.Supp.2d 583, 593 (W.D.Va.1998) (quoting 1 *Nimmer on Copyright* § 1.01[B][1][a] ). This requires the court to examine the precise contract rights being asserted. *Fischer v. Viacom Int'l, Inc.*, 115 F.Supp.2d 535, 542 (D.Md.2000).

 Claim six alleges Madison breached the Agreement by "daily copying the TCS data base and permitting [its] employees to use the ProvideC copy of the TCS data base." (First Am. Answer and Countercl. ¶ 144.) Madison argues that BMS' claim for breach of contract is merely a recast of its claim two, a copyright infringement claim based upon Madison's daily archiving of the TCS data base in a file designated "ProvideC" and permitting its employees to access the copy. (*See id.* ¶¶ 97–100.) BMS argues claim six entails a distinct cause of action not within the subject matter of copyright because: (1) explicit in the Agreement was the extra element of Madison's promise to pay for any TCS use; and (2) Madison permitted its employees to use the ProvideC copy of the TCS program. In support of its argument, BMS relies on *Acorn Structures, Inc. v. Swantz* in which the court held that the plaintiff's breach of contract claim was not preempted because the corresponding promise to pay for *any* use by the defendant constituted an extra element. 846 F.2d 923, 926 (4th Cir.1988).

The court disagrees with BMS' arguments on this issue. *Acorn Structures* is not applicable here. In *Acorn Structures*, the plaintiff based its breach of contract claim on a failure to pay. *Id.* By contrast, BMS bases this breach of contract claim on the daily copying of its TCS program. Nowhere in claim six does BMS allege Madison breached a promise to pay. However, even if BMS had alleged a breach of a promise to pay in claim six, the Agreement does not contain an explicit promise to pay for excessive backing up of the TCS program. The express promise to pay contained in the Agreement is one to pay for any concurrent connections in excess of the 15 purchased by Madison. (Compl. Ex. A ¶ 3.2.) As to archival copies, the Agreement provides that Madison

may make one archival copy and that "[a]ny copy of the Licensed Software made by [Madison] is the exclusive property of BMS." (*Id.* ¶ 3.5.) Thus, there is no express promise to pay for any excess copying of the TCS program in the Agreement and any expectation of payment is implied by the fact that the copies are the property of BMS. These kinds of implied promises to pay do not constitute an extra element. *See Fischer,* 115 F.Supp.2d at 542 ("If ... this [contract] right arises simply from an implied promise not to use another's ideas without paying for them, then the state law action is ... preempted."). Furthermore, claim six is not saved because Madison permitted its employees to use the unauthorized ProvideC copy. Madison's grant of access to its employees is nothing more than distribution, a right protected by the Copyright Act. *See* 17 U.S.C. § 106(3).

Like claim six, claims seven and eight are nothing more than recasts of BMS' copyright infringement claims. Claim seven's allegations that Madison breached the Agreement by "permitting its employees to connect to the TCS data base through the Remedy program" (First Am. Answer and Countercl. ¶ 147), are the same actions underlying BMS' claim three for copyright infringement. (*See id.* ¶ 11.) Likewise, claim eight's alleged breach by "altering, enhancing, and otherwise modifying the BMS software" (*id.* ¶ 150), duplicates BMS' claim four for copyright infringement.[5] (*See id.* ¶ 122–29.)

All of BMS' breach of contract claims emanate from the alleged wrongful reproduction and distribution of its TCS program; no extra elements make them qualitatively different. Because BMS attempts to vindicate through its breach of contract claims the same rights it pursues through

the Copyright Act, these claims are preempted. *See Brown v. McCormick,* 23 F.Supp.2d 594, 608 (D.Md.1998) (finding the plaintiff's state law claims, including breach of contract, preempted). Therefore, claims six, seven, and eight for breach of contract will be dismissed.

### 2. Conversion (Claims 13–16)

Conversion in both Colorado and North Carolina consists of the unauthorized exercise of dominion over the property of another. *See Byron v. York Inv. Co.,* 133 Colo. 418, 296 P.2d 742, 745 (1956) ("Conversion is any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another."); *Peed v. Burleson's, Inc.,* 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956) ("Conversion is ... an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights."). It is hornbook law that a "state law action for conversion will not be preempted [by the Copyright Act] if the plaintiff can prove the extra element that the defendant unlawfully retained the physical object embodying plaintiff's work." *United States ex rel. Berge v. Board of Trs. of the Univ. of Ala.,* 104 F.3d 1453, 1463 (4th Cir.1997) (citations omitted). Where a plaintiff, however, alleges only unlawful retention of its intellectual property rights, the conversion claim is preempted. *Id.*

Applying the above standard, it is clear that BMS' conversion claims are preempted. BMS alleges that Madison converted its software, in claim thirteen, by making more than fifteen concurrent connections (First Am. Answer and Countercl. ¶ 195); in claim fourteen, by daily

---

5. BMS concedes that claim eight is preempted by the Copyright Act. (Br. Opp'n Pl.'s Mot.

Dismiss Claims 6–8, 10–19 of Am. Countercl. at 6.)

copying the TCS data base and converting it to ProvideC for use by its employees (*id.* ¶ 201); in claim fifteen, by allowing its employees to connect to the TCS data base through the Remedy program (*id.* ¶ 207); and in claim sixteen, by altering, enhancing, and otherwise modifying the TCS program (*id.* ¶ 213). None of these claims allege that Madison converted any physical object. Instead, the connecting, copying, converting, and distributing alleged by BMS relate to the intangible program. Accordingly, BMS' claims for conversion are preempted by the Copyright Act and will be dismissed.

### 3. Colorado Statutory Recovery of Stolen Property (Claim 18)

■■■ Claim eighteen of BMS' complaint is for recovery of stolen property under Colorado Revised Statutes § 18–4–405. It alleges that Madison knowingly obtained and exercised control over the TCS program without BMS' consent. The Colorado statute raised by BMS, which is part of the state's criminal theft statute, provides:

> All property obtained by theft, robbery, or burglary shall be restored to the owner. . . . The owner may maintain an action . . . against the taker thereof . . . [to] recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and . . . costs of the action and reasonable attorney fees.

C.R.S. § 18–4–405. Criminal theft occurs when a person "knowingly obtains or exercises control over anything of value of another without authorization . . . and . . . intends to deprive the other person permanently of the use or benefit of the thing of value." C.R.S. § 18–4–401.

Madison argues that BMS' statutory claim for recovery of stolen property should be dismissed because it is similar to a civil action for conversion. BMS contends that the statutory claim requires proof of two additional elements which make it qualitatively different from a copyright claim—criminal intent and use of improper means. The Colorado Supreme Court, however, has distinguished the statutory recovery claim from conversion only in that conversion "does not require that a wrongdoer act with the specific intent to permanently deprive the owner of his property." *Itin v. Ungar,* 17 P.3d 129, 136 n. 10 (Colo.2000). Therefore, the sole issue as to the statutory recovery claim is whether specific intent is an element that makes it qualitatively different from a copyright infringement claim. The court finds it does not.

Although BMS cites several cases in support of its argument against preemption, including a Washington Court of Appeals case and several cases dealing with misappropriation, the more persuasive argument is advanced by Madison in reliance on *Rosciszewski v. Arete Associates, Inc.* 1 F.3d 225 (4th Cir.1993). In *Rosciszewski,* the Fourth Circuit was faced with whether a claim brought under the Virginia Computer Crimes Act was preempted by the Copyright Act. The claim in question in *Rosciszewski* required proof: "(1) that the defendant 'use[d] a computer or computer network'; (2) 'without authority'; and (3) 'with the intent to . . . [o]btain property or services by false pretenses; . . . [e]mbezzle or commit larceny; or . . . [c]onvert the property of another.'" *Id.* at 230 (alterations in original) (quoting Va.Code Ann. § 18.2–152.3). The court held Rosciszewski's claim did not require proof of elements that make it qualitatively different from copyright infringement of a computer program because the intent element did not change the state claim from one of unauthorized copying. *Id.* Citing the Second Circuit Court of Appeals, the court recognized that "[a]n action will not be

446

saved from preemption by elements such as awareness or intent, which alter 'the action's scope but not its nature.'" *Id.* (quoting *Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 717 (2d Cir.1992)).

Similarly, because BMS' statutory claim for recovery of stolen property differs from conversion only with regard to the added element of specific intent and that element does not make the claim qualitatively different from one of copyright infringement, the statutory claim is preempted and will be dismissed.

### 4. Unjust Enrichment (Claim 19)

 Claim nineteen of BMS' complaint is for unjust enrichment claiming Madison has derived a benefit from BMS' TCS program without just compensation. Under Colorado law, the test for unjust enrichment is whether at a plaintiff's expense a defendant received a benefit under circumstances that would make it unjust for the defendant to retain the benefit without paying. *DCB Constr. Co. v. Central City Dev. Co.,* 965 P.2d 115, 199–120 (Colo.1998). In North Carolina, a party must show it conferred a benefit on another, the other party consciously accepted the benefit, and the benefit was not conferred gratuitously. *Southeastern Shelter Corp. v. BTU, Inc.,* 154 N.C.App. 321, 330, 572 S.E.2d 200, 206 (2002).

 It is not necessary for the court to determine whether BMS' claim for unjust enrichment is preempted by the Copyright Act, for the claim fails for another reason. Under the laws of Colorado and North Carolina, a claim for unjust enrichment may not be brought in the face

of an express contractual relationship between the parties. *Backus v. Apishapa Land and Cattle Co.,* 44 Colo.App. 59, 61–62, 615 P.2d 42 (1980); *Southeastern Shelter,* 154 N.C.App. at 331, 572 S.E.2d at 206. Here, because all of the facts pleaded by BMS allege there is an express contract between the parties, BMS cannot now claim the existence of an implied contract. Therefore, BMS' claim for unjust enrichment will be dismissed.

### B. Pleading Requirements of Rule 9(b) (Claims 10–12)

 Madison brought suit for declaratory judgment and filed an amended complaint as a matter of right on May 19, 2003. On July 2, 2003, BMS filed an answer and counterclaim alleging three counts of misrepresentation, both fraudulent and negligent (claims 10–12). Subsequently, Madison moved to dismiss the misrepresentation claims for want of particularity under Rule 9(b).[6] Madison's motion to dismiss was still pending when the deadline for amendment of pleadings passed on December 31, 2003. On April 2, 2004, BMS moved for amendment of its counterclaims to add claims for breach of contract, conversion, Colorado statutory recovery of stolen property, and unjust enrichment based on newly discovered evidence. A hearing was held on the motion on April 26, 2004, before Magistrate Judge Sharp. Judge Sharp, considering the deadline for amending pleadings had expired on December 31, 2003, ruled that BMS could amend its counterclaims to add the new claims.[7] On May 6, 2004, BMS

---

6. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). In construing Rule 9(b), courts require that a plaintiff plead the "time, place, and contents of the alleged fraudulent representation, as well as

the identity of each person making the misrepresentation and what was obtained thereby." *Liner v. DiCresce,* 905 F.Supp. 280, 287 (M.D.N.C.1994) (quoting *Riley v. Murdock,* 828 F.Supp. 1215, 1225 (E.D.N.C.1993)).

7. The court notes that although Judge Sharp stated in the hearing "[BMS] can amend the

filed an amended answer and counterclaim. BMS' amendment not only added the requested state law claims, but also brought the misrepresentation claims (newly renamed tenth through twelfth claims) into compliance with Rule 9(b) by adding more particularity. Now Madison seeks to dismiss the misrepresentation claims, despite their particularity, because they were amended by BMS without leave of the court.

■■■ Madison's motion to dismiss raises a series of interconnected issues to be determined by this court. First, the court must determine whether Rule 9(b) applies to allegations of negligent misrepresentation. The court holds it does. Rule 9(b) does not expressly refer to the tort of negligent misrepresentation. As a result, some courts have refused to extend Rule 9(b)'s coverage to those claims. *See, e.g., Masso v. United Parcel Serv. of Am., Inc.,* 884 F.Supp. 610, 615 (D.Mass.1995); *In re LILCO Sec. Litig.,* 625 F.Supp. 1500, 1504 (E.D.N.Y.1986). However, other courts, recognizing the close kinship of negligent misrepresentation and fraud, have extended Rule 9(b) to "all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Toner v. Allstate Ins. Co.,* 821 F.Supp. 276, 283 (D.Del.1993); *see, e.g., In re Leslie Fay Cos. Sec. Litig.,* 918 F.Supp. 749, 766 (S.D.N.Y.1996); *Pitten v. Jacobs,* 903 F.Supp. 937, 951 (D.S.C. 1995); *Arndt v. Prudential Bache Sec., Inc.,* 603 F.Supp. 674, 676 (S.D.Cal.1984). This court adopts the latter approach because the underlying rationales for requiring heightened pleading for fraud equally apply to negligent misrepresentation. *See Breeden v. Richmond Cmty. Coll.,* 171 F.R.D. 189, 198–202 (M.D.N.C.1997) (ana-

lyzing the rationales of Rule 9(b) and applying the heightened standard to negligent misrepresentation). Although this court has not located any controlling authority from the Fourth Circuit Court of Appeals on the issue, by adopting the Rule 9(b) standard in this case, it conforms our requirements to those of our sister courts within this circuit. *See, e.g., Giannaris v. Cheng,* 219 F.Supp.2d 687, 694 (D.Md. 2002); *Pitten,* 903 F.Supp. at 951.

■■■ Second, the court must decide whether BMS' original counterclaims met the pleading standard contained in Rule 9(b). They did not. As to Defendant's original fourth claim, Defendant admits it lacks the required particulars of who made the statements, to whom the statements were made, and where the statements were made. *See Liner v. DiCresce,* 905 F.Supp. 280, 287 (M.D.N.C.1994). Defendant's original fifth claim for fraudulent concealment did not allege reasonable and detrimental reliance or other Rule 9(b) standards for concealment claims. *See Frank M. McDermott, Ltd. v. Moretz,* 898 F.2d 418, 421 (4th Cir.1990); *Breeden,* 171 F.R.D. at 195–96. Finally, Defendant's original sixth claim for negligent misrepresentation did not contain any of the heightened pleading requirements. Therefore, Defendant's claims as originally pleaded were deficient under Rule 9(b).

■■■ Third, having found the original counterclaims deficient under Rule 9(b), the court must determine whether the counterclaims should have been dismissed with prejudice or whether BMS should have been granted leave to amend. Rule 9(b) must be read in light of the liberal amendment provisions contained in Rule 15(a) of the Federal Rules of Civil Proce-

counterclaims to present the claims that [it has] mentioned today in oral argument," (Mot. Hr'g Apr. 26, 2004), the written order

provides only "[t]he Court allowed amendment of Defendant's counterclaims." (Disc. Order May 20, 2004 at 1.)

dure ("Rule 15(a)"). Rule 15(a) gives courts the discretion to allow amendment of pleadings when justice so requires. Fed.R.Civ.P. 15(a); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Courts reading these two rules together have, in most instances, granted leave to amend the deficient pleading in lieu of dismissal with prejudice. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1300 (3d ed.2004); *see, e.g., Mullinax v. Radian Guar. Inc.*, 199 F.Supp.2d 311, 331 (M.D.N.C.2002); *United States ex rel. Lindsey v. Trend Cmty. Mental Health Servs.*, 88 F.Supp.2d 475, 481 (W.D.N.C.1999); *Estate of Dearing by Dearing v. Dearing*, 646 F.Supp. 903, 914 (S.D.W.Va.1986). Wright and Miller suggest that "dismissals for non-compliance with Rule 9(b) or refusals to grant leave to replead should be restricted to situations in which the trial court in the exercise of its discretion is convinced the pleader has had an opportunity to correct the defect but cannot or will not." Wright & Miller, *supra*, § 1300. Here, BMS could have, and in fact did, bring its counterclaims into compliance with Rule 9(b). The real issue is whether its failure to do so before the amendment deadline was willful.

The court cannot find BMS' failure to amend before December 31, 2003, willful. While it is true that BMS could have voluntarily sought to amend its fraud claims before the amendment deadline passed, it was not required to do so until the court deemed those claims deficient. Because BMS had opposed Madison's motion to dismiss on the basis that its misrepresentation claims were in compliance with Rule 9(b) and the issue was pending before the court at the time the amendment deadline passed, BMS could not have been certain that a deficiency existed in its claims.

Under the circumstances, the proper result is to allow BMS to amend its misrepresentation claims to comply with Rule 9(b). The fact that BMS amended its counterclaims without leave of the court is not looked upon favorably nor is the practice encouraged; just the opposite. However, because the court would have granted BMS leave to amend its counterclaims and because Madison does not appear to have been prejudiced, the court will accept the amendments previously filed. *See Straub v. Desa Indus., Inc.*, 88 F.R.D. 6, 9 (M.D.Pa.1980) ("Permitting an amendment without formal application to the court under these circumstances is in keeping with the overall liberal amendment policies of Rule 15(a) and the general policy of minimizing needless formalities."). At this point, Madison no longer contends that BMS' counterclaims for fraudulent and negligent misrepresentation lack the Rule 9(b) particularity. Thus, the court will deny Madison's motion to dismiss those claims.

## IV. CONCLUSION

For the reasons stated herein,

IT IS ORDERED that Plaintiff's Motion to Dismiss Claims 6–8, 10–19 of Defendant's Amended Counterclaim [47] is DENIED in part and GRANTED in part. As to Defendant's counterclaims for breach of contract (claims 6–8), conversion (claims 13–16), Colorado statutory recovery of stolen property (claim 18), and unjust enrichment (claim 19), Defendant's motion is GRANTED. As to the counterclaims for fraudulent and negligent misrepresentation (claims 10–12), Defendant's motion is DENIED.

Plaintiff's previously filed Motion to Dismiss, in Part, Defendant's Counterclaim

[13] has been rendered moot by this decision.