### Stuart LONG, Plaintiff,

v.

### BOSTON SCIENTIFIC CORPORATION and David Maness, Defendants.

### C.A. No. 2:08–CV–00805–PMD.

United States District Court,
D. South Carolina,
Charleston Division.

Sept. 15, 2008.

---

Allan Riley Holmes, Timothy O'Neill Lewis, Gibbs and Holmes, Charleston, SC, for Plaintiff.

Alex S. Drummond, John F. Meyers, Seyfarth Shaw, Atlanta, GA, John H. Tiller, Wendy J. Keefer, Haynsworth Sinkler Boyd, Charleston, SC, for Defendants.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court on Plaintiff Stuart Long's ("Plaintiff" or "Long") Motion to Remand this matter back to state court pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. Defendants Boston Scientific Corporation ("Boston Scientific") and David Maness ("Maness") (collectively, "Defendants") have filed a Memorandum in Opposition to this Motion. For the reasons set forth herein, Plaintiff's Motion is granted.

## BACKGROUND

Plaintiff was employed by Defendant Boston Scientific as a medical equipment salesman. In February 2006, Plaintiff was visiting a hospital staff in Savannah, Georgia, on a sales matter, and held an "in-service" meal, at which he discussed Boston Scientific equipment with hospital staff. Plaintiff billed the meal to Boston Scientific as a business expense. However, it was later discovered that Plaintiff had allegedly made an offensive comment to a female hospital employee during the meal, and that Plaintiff had misidentified the hospital employees present at the meal to Boston Scientific on a form giving the details of the meal.[1] Boston Scientific personnel met to discuss Plaintiff's infractions, and, based upon the erroneous expense report, decided to terminate his employment.

After being informed that his employment had been terminated, Plaintiff retained an attorney, and on June 9, 2006, Plaintiff's counsel wrote a letter to Defendants. In this letter, Defendants were informed that Plaintiff wished to have his employment reinstated, and that if this did not occur, Plaintiff believed he had several grounds for legal recourse, including a potential claim under Section 510 of the Employee Retirement Income Security Act (ERISA) based on an allegation that Defendants had fired Plaintiff in order to avoid paying his health care costs, which were unusually high due to Plaintiff's severely disabled daughter.[2] In a letter dated July 19, 2006, Defendants' Director of Employment Law responded to Plaintiff's counsel with a letter which vehemently denied Plaintiff's allegation that Defendants had terminated his employment to avoid having to pay his daughter's health care expenses. In Plaintiff's counsel's August 11 reply, he characterized this response as "the offense you took at my even outlining a potential ERISA claim."

Plaintiff filed suit in the Charleston County Court of Common Pleas on November 11, 2006, claiming defamation, breach of employment contract, and a violation of the South Carolina Payment of Wages Act, but did not file any claim for relief under ERISA. Plaintiff alleges that Defendant Boston Scientific did not follow its own personnel procedures in terminating his employment, and that behavior similar in character to the behavior which was the ostensible reason for his firing was widely tolerated within the company. Plaintiff further alleges that the expense report for the in-service meal was merely used as a pretext by Boston Scientific to fire him.[3] While Plaintiff's theory as to Defendants' true motive in firing him is made explicit nowhere in the pleadings themselves, Plaintiff made several statements during his deposition testimony to the effect that he believed his daughter's medical condition and attendant health care costs was one major reason his position was terminated.[4]

1. Plaintiff reported that doctors at the hospital had been present at the meal, when in fact no doctors were among the hospital personnel at the meeting.

2. Plaintiff's daughter suffered a stroke related to treatment for a malignant brain tumor, and Plaintiff estimates her medical expenses at $10,000 to $15,000 per month.

3. The Complaint explicitly claimed that "at the conclusion of its investigation, the defendants determined to terminate the employment of the plaintiff without good cause and to provide a pretext for that termination." (Compl. at 3, ¶ 9.)

4. In his deposition, Plaintiff stated that the ordinary insurance coverage, provided directly by Boston Scientific, "will pay out to an employee $100,000 a year, and after that, they go into their major medical program.... [I]t would only assume, to a reasonable person, that I was terminated partly because of her

After Plaintiff asserted at his February 5, 2008 deposition that he believed Defendants may have actually terminated his employment because of the cost of providing him and his family with health care coverage, Defendants concluded that Plaintiff was seeking to recover under state law on claims that could only properly be brought under ERISA. Shortly thereafter, on March 6, Defendants removed the case to this court. On April 6, Plaintiff filed a Motion to Remand this case back to the Charleston County Court of Common Pleas. Defendants filed a Response to this Motion on April 24, to which Plaintiff filed a Reply on May 5.

## DISCUSSION

▮ The burden of demonstrating jurisdiction resides with "the party seeking removal." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir.2004) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994)). The

high medical expense and exposure to Boston Scientific, to the tune of excess of $100,000 a year." (Long Dep. at 53, ll. 1–3, 7–11.) Later in the deposition, Plaintiff stated, "But the bigger picture, John, is that we're talking about a 13–year–old girl's life. That I worked my brains out for Boston Scientific; never written up once; never on a performance improvement program; received stock options every year from the CEO that basically stated that this was because of my good performance." (Long Dep. at 55, ll. 6–12.) Shortly thereafter, in response to the question, "[w]as it therefore your understand that they got tired of paying the hundred thousand and therefore terminated you?," Plaintiff answered, "[t]hat is my understanding, based on the way—the irresponsibility and the recklessness which Boston Scientific terminated me . . ." (Long Dep. at 55, ll. 19–24.)

Later in the deposition, the following exchange occurred:

Q: What do you think the real reason for your termination was?
A: The real reason. I think it's more than just one. I think there was a whole facet of them.
Q: Okay. One was your daughter's health care.
A: One was my daughter's health care. Two, was jealousy of Dave Maness over my popularity with his team; with the stature that I had developed with those guys based on his lack of performance; based on his lack of initiatives.

(Long Dep. at 58, ll. 13–24.) Later, in response to the question, "[w]hy do you think your daughter's health care expense was a factor?," Plaintiff responded:

Well, I think back to when I was terminated. It was clearly stated to us, in the field, that we were going through some financial difficulties; expenses were going to be cut back; things were tightened down; we had to get approval for things that we hadn't gotten approvals for. So to me, a hundred thousand dollars a year, seemed to be a natural determination.

(Long Dep. at 60, ll. 10–20.) Much later in the deposition, when talking about the erroneous expense report as a possible grounds for his termination, Plaintiff said:

So now, you asked me earlier this morning, why do I think it's about my daughter. Why do you think they're trying to get rid of me. I think a reasonable person would look at this and say that company was reckless in the way they dealt with an employee like you.

And the only thing that a reasonable person could come to is the simple fact that they wanted to get rid of me because of my daughter's situation. They wanted me off the books. Being that Dave Maness and Scott Heuler, Mark Turner, all of them told me this decision was made way up the chain, it's out of our control.

So it made me believe that Boston Scientific, way up the chain, was looking at dollars and cents. They had a rep in Charleston, South Carolina that was blowing it out of the water—making tons of money. Okay? They had a hundred thousand dollar exposure per year for this employee. They were looking to cut things out.

So the only thing I can draw to the conclusion is, is that they used a trumped up charge and got lucky and terminated me. Because I would like to ask—and we will ask—Boston Scientific people to testify that they have never made a simple mistake. That they have not made a simple mistake in filling out an expense report that was $222.

(Long Dep. at 222, 1.10–p. 223, 1. 12.)

court is obliged to construe removal jurisdiction strictly because of the "significant federalism concerns" implicated. *Id.* Therefore, "[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary." *Id.*

Section 1441 of Title 28 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). In this case, Defendant alleges that removal was proper because the district court had original jurisdiction to hear Plaintiff's case under 28 U.S.C. § 1331. Section 1331 grants district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Thus, the court must decide whether Plaintiff's claims "aris[e] under the Constitution, laws, or treaties of the United States." *Id.*

Section 1447(c) of the United States Code provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Plaintiff asserts that all three causes of action alleged in the Complaint-defamation, breach of contract, and a violation of the South Carolina Payment of Wages Act-are firmly grounded in state law and do not present a question of federal law, and thus this court lacks subject matter jurisdiction. Defendants disagree, arguing that Plaintiff's claim is inextricably tied to ERISA, and therefore assert that this case belongs in federal court. Plaintiff also claims that even if this court would have had jurisdiction over his claims had they originally been filed in federal court, Defendants' removal was still inappropriate because it

was not done in a timely fashion, and should be remanded on those grounds.

## I. Whether This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims

 Jurisdiction is established based on the allegations of the plaintiff's complaint filed in state court. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Federal courts are presumptively without jurisdiction over civil matters, and the burden of establishing the contrary rests upon the party seeking jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Removal jurisdiction is strictly construed; in doubtful cases, the action must be remanded. *See Mulcahey,* 29 F.3d at 151.

 Generally, the presence of federal question jurisdiction is determined by the well-pleaded complaint rule. *Gully v. First Nat'l Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). In other words, federal question jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly-pleaded complaint." *Caterpillar, Inc.,* 482 U.S. at 392, 107 S.Ct. 2425; *King v. Marriott Int'l, Inc.,* 337 F.3d 421, 424 (4th Cir.2003). Thus, pursuant to the well-pleaded complaint rule, the plaintiff is the master of his claim, and he may avoid federal jurisdiction by exclusive reliance on state law. *Id.* (internal citations omitted); *see also The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon.") (Holmes, J.); *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 809, n. 6, 106 S.Ct. 3229, 92

L.Ed.2d 650 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."); *Great North R.R. Co. v. Alexander,* 246 U.S. 276, 282, 38 S.Ct. 237, 62 L.Ed. 713 (1918) ("[T]he plaintiff may by the allegations of his complaint determine the status with respect to removability of a case."). Accordingly, under the well-pleaded complaint rule, courts "ordinarily ... look no further than the plaintiff's complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331." *Custer v. Sweeney,* 89 F.3d 1156, 1165 (4th Cir.1996). Moreover, "[w]hen evaluating the propriety of removal, the district court must determine the nature of plaintiff's claims from the face of the complaint at the time the petition for removal was filed." *Martin v. Lagualt,* 315 F.Supp.2d 811, 814 (E.D.Va.2004) (citation omitted).

 However, one significant exception to the well-pleaded complaint rule is the doctrine of complete preemption. Complete preemption "refers to that 'small category of statutes that "authoriz[e] removal of actions that sought relief only under state law." ' " *Lontz v. Tharp,* 413 F.3d 435, 438 (4th Cir.2005) (quoting *Alongi v. Ford Motor Co.,* 386 F.3d 716, 724 (6th Cir.2004) (in turn quoting *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6–7, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003))). Complete preemption is appropriate only "if the subject matter of a putative state law claim has been totally subsumed by federal law-such that state law cannot even treat on the subject matter...." *Id.* at 439–40. The purpose of the doctrine is to "prevent[ ] plaintiffs from 'defeat[ing] removal by omitting to plead necessary federal questions.'" *Id.* at 440 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). The Fourth Circuit has explained the difference between complete preemption and ordinary preemption as follows:

In assessing whether defendants have carried their burden we may not conflate "complete preemption" with "conflict" or "ordinary" preemption. While these two concepts are linguistically related, they are not as close kin jurisprudentially as their names suggest. Complete preemption is a "jurisdictional doctrine," while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim. Ordinary preemption has been categorized as a federal "defense to the allegations." And as a mere defense, the "preemptive effect of a federal statute ... will not provide a basis for removal." Even if preemption forms the very core of the litigation, it is insufficient for removal.

By contrast, when complete preemption exists, there is "no such thing" as the state action, since the federal claim is treated as if it appears on the face of the complaint because it effectively displaces the state cause of action. Complete preemption thus "transform[s] the plaintiff's state-law claims into federal claims." Since the complaint is then understood to state a federal question, the well-pleaded complaint rule is satisfied, thereby justifying removal under § 1441(b).

Recognizing that complete preemption undermines the plaintiff's traditional ability to plead under the law of his choosing, the Supreme Court has made clear that it is "reluctant" to find complete preemption. The Court has, in fact, found complete preemption in only three statutes. Unsurprisingly, therefore, the Court has articulated exacting standards that must be met before it will find complete preemption. Most notably, the congressional intent that state

law be entirely displaced must be clear in the text of the statute.

*Id.* at 440–41 (citations omitted).

One such statute which completely preempts state law is ERISA, specifically § 502 of the Act, which contains its civil enforcement provisions. The Supreme Court has ruled:

> [T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)) (emphasis in original).

■ This complete preemption of state law by ERISA applies to all claims which seek to vindicate rights guaranteed by § 510, which provides that, "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan...." 29 U.S.C. § 1140. Section 510 prevents an employer from discharging an employee merely for exercising or protecting their vested pension or health benefits. *Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 237 (4th Cir. 1991). " 'When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected' by § 510 of ERISA, 'due regard for the federal enactment requires that state jurisdiction must yield.' " *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 145, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (quoting *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon,* 359 U.S. 236, 244, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)).

■ Courts have consistently held that when a plaintiff's state law causes of action are based upon allegations that would give rise to a § 510 claim, such claims are subject to complete preemption under ERISA. "[A] garden variety state law cause of action, not particularly troublesome in circumstances not involving employee benefits, may be preempted where it is used to remedy exactly the type of illegal activity proscribed by ERISA." *Tingey v. Pixley–Richards West, Inc.,* 953 F.2d 1124, 1130–31 (9th Cir.1992). Specifically, when a plaintiff is alleging that they were fired so that the employer would no longer have to provide them with benefits, and attempts to use a state law cause of action to seek relief, that claim will be preempted, because "[t]he sole remedy for being fired by an employer on account of benefits must be under ERISA...." *Id.* at 1132. *See also Darcangelo v. Verizon Commc'ns, Inc.,* 292 F.3d 181, 187 (4th Cir.2002) ("[W]hen a complaint contains state law claims that fit within the scope of ERISA's § 502 civil enforcement provision, those claims are converted into federal claims, and the action can be removed to federal court.") (ultimately holding that because plaintiff's claims did not give rise to a § 510 claim, the state law cause of action was not completely preempted). There-

fore, if Plaintiff's state law causes of action are based upon allegations that would give rise to a claim under § 510 of ERISA, and seek to vindicate rights which ERISA was enacted to vindicate, this court has jurisdiction over the present litigation and remand would be inappropriate.

Furthermore, the court notes that it is not necessary for the exercise of federal jurisdiction over this case that each of Plaintiff's claims individually form the basis of a potential § 510 suit. If any one of Plaintiff's causes of action could have been brought under § 510, that cause of action will be automatically transformed into an ERISA suit. *See Darcangelo,* 292 F.3d at 195 (4th Cir.2002) ("[W]hen a claim under state law is completely preempted and is removed to federal court because it falls within the scope of § 502, the federal court should not dismiss the claim as preempted, but should treat it as a federal claim under § 502."). A single ERISA claim, in turn, gives this court original federal question jurisdiction, and this court "may exercise pendent jurisdiction over law claims arising from a nucleus of operative fact common to both the state law claims and the ERISA claim." *Sorosky v. Burroughs Corp.,* 826 F.2d 794, 800 (9th Cir.1987) (citing *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). The question before the court, then, is whether any one of Plaintiff's three state law causes of action are preempted by ERISA.

■ In determining whether a state law cause of action is actually asserting a claim which is within the exclusive dominion of ERISA, a court is not limited to examining only the plaintiff's complaint and subsequent formal pleadings. "For purposes of preemption, the Court's analysis must focus on the 'heart and soul of the complaint,' not the defendants proffered reason for the termination." *Merrill v. Kiewit Pac. Co., Inc.,* 2006 WL 954187 at

*5 (N.D.Cal. Apr. 12, 2006) (quoting *Karambelas v. Hughes Aircraft Co.,* 992 F.2d 971, 974 (9th Cir.1993)). While courts give full deference to a plaintiff's complaint under the well-pleaded complaint rule, the very essence of the doctrine of complete preemption is to thoroughly examine the entirety of the record to root out claims which are federal in nature "when stripped of their state law disguises." *Tingey,* 953 F.2d at 1130. Accordingly, a court may look outside the "four corners" of a plaintiff's formal documents filed before the court to depositions, interrogatories, and other methods of discovery to determine the exact nature of a plaintiff's allegations. *See id.* at 1131 (holding that the plaintiff's theory may "become apparent through discovery"). At least one court has explicitly held that where a plaintiff's complaint only alleges state law causes of action, and the complaint and other legal pleadings make no allegation that the employer terminated the employee to avoid paying for health care benefits, the state law claims can still be completely preempted under § 510 if the plaintiff gives deposition testimony that the avoidance of providing health care benefits was the employer's only true motive. *See, e.g., Felton v. Unisource Corp.,* 940 F.2d 503, 507 (9th Cir.1991) ("[I]t is appropriate to take into consideration Don Felton's deposition testimony, which makes it clear that the basis for the claims in the complaint is that Unisource discharged Felton because it desired to avoid medical insurance payments to him."). Therefore, in discerning the true nature of Plaintiff's state law claims, this court may look to the deposition testimony of the parties.

■ The court begins by examining Plaintiff's breach of contract cause of action. Plaintiff asserts that his termination constitutes a breach of his employment contract. Under South Carolina law, a

terminated employee has a cause of action against his or her former employer for breach of employment contract when the employer terminates the employee without cause. *Small v. Springs Indus., Inc.*, 292 S.C. 481, 484, 357 S.E.2d 452, 454 (1987). When courts seek to determine whether an employee's termination constitutes a breach of that employee's employment contract, "the test is not whether the employee actually committed misconduct, but whether the employer had a reasonable good faith belief that it had cause to terminate." *Prescott v. Farmers Tel. Co-op., Inc.*, 328 S.C. 379, 393, 491 S.E.2d 698, 705 (Ct.App.1997). "[T]he fact finder must not focus on whether the employee actually committed misconduct; instead, the focus must be on whether the employer reasonably determined it had cause to terminate." *Conner v. City of Forest Acres*, 348 S.C. 454, 464–65, 560 S.E.2d 606, 611 (2002). In order to maintain a successful breach of contract cause of action, then, Plaintiff must show that Defendants terminated his employment without a "reasonable good faith belief" that Plaintiff's transgressions gave them cause to terminate him.

Significantly, this cause of action does not require an inquiry into any possible ulterior motives on the part of the employer. This cause of action does not impose liability upon an employer for firing an employee for pretextual reasons so long as those pretextual reasons give the employer a good faith belief that it has good cause to terminate the employee. In other words, if the pretextual reason is actually a legitimate reason to terminate the employee, the employee will not have a valid breach of employment contract cause of action against the employer, even if the employer's "true" motivation was illegitimate.[5]

In his pleadings, Plaintiff has alleged that he had an exemplary performance and disciplinary record before submitting the erroneous expense report in question. Plaintiff further alleges that Defendants lacked a good faith belief that his actions at the in-service meal and his erroneous reporting of who was present at the in-service actually constituted grounds for termination, and that misreporting of the type which formed the ostensible basis for his termination was commonplace at Boston Scientific. Maness himself has acknowledged submitting an inaccurate expense report on at least one occasion.[6] Plaintiff also alleges that Defendants did not follow their ordinary disciplinary and termination procedures, and ultimately simply used the erroneous expense report as a "pretense" for summarily firing him. Plaintiff argues that these allegations, taken together, support a claim for breach of contract, but do not involve ERISA, since Plaintiff has not linked his termination to his health benefits in any pleadings before either this court or the state court.

■ The mere theoretical existence of a possible § 510 claim is insufficient to

5. Of course, this does not mean that an employer may terminate an employee for illegitimate reasons and face no consequences whatsoever so long as it has a legitimate pretextual reason. Any employer doing so could be held liable under ERISA, Title VII of the Civil Rights Act of 1964, or any number of other statutory or common law causes of action. It cannot, however, be held liable for breach of employment contract under South Carolina law.

6. At his deposition, Maness explicitly acknowledged submitting an expense report that erroneously reported a fellow Boston Scientific employee as being present at the meal when that employee was in fact out of town at the time. Ironically, the employee in question was none other than Plaintiff. Maness acknowledged making the error, and acknowledged informing the company about it, but testified that he was not subject to any type of disciplinary action as a result of the inaccurate report. (Maness Dep. at 99–100.)

have a plaintiff's state law claim completely preempted under ERISA. While Defendants have directed this court's attention to several factually similar cases where a court has found a plaintiff's state law claims completely preempted by ERISA, they are all materially distinguishable from the case at hand. In *Tingey,* the court held that the plaintiff's state law claims were completely preempted by ERISA, but this was largely because plaintiff's complaint had explicitly alleged that the defendant terminated him in order to deny providing him with health benefits. 953 F.2d at 1131. Furthermore, that court explicitly noted that that was the only motivation Tingey had alleged as being the reason behind his termination. *Id.* In *Sorosky,* like *Tingey,* the plaintiff had explicitly alleged in his complaint that he had been terminated so that the employer would no longer have to provide him with retirement benefits. 826 F.2d at 800. But the plaintiff also alleged several other motivations for his termination, and the court held that the "claim is not preempted to the extent it relies on theories independent of the benefit plan." *Id.* Finally, in *Felton,* perhaps the most factually analogous case to the present one, a court found a plaintiff's state law claims to be completely preempted by ERISA based upon his statements at deposition that employer had terminated him to avoid having to provide him with health care benefits. However, the court noted that this was the only theory offered by the plaintiff, 940 F.2d at 507. Most importantly, the plaintiff's claim which was found to be completely preempted in that case was an Arizona state wrongful termination claim, which, unlike Plaintiff's breach of contract action in the present case, put the employer's true motivation in firing the employee squarely at issue.

On the other hand, the Ninth Circuit in *Karambelas* decided a case where a terminated employee had filed a complaint against the employer for wrongful termination and made no allegations in the complaint that he had been fired for a benefit-avoidance motive. However, in deposition testimony, in response to questioning from the defendant's counsel, plaintiff speculated that he may have been fired in part because defendant wanted to avoid the vesting of plaintiff's pension rights. Seizing on this, defendant removed the case to federal court on grounds that plaintiff's claim was completely preempted under ERISA. Plaintiff's subsequent motion to remand the matter back to state court was denied by the district court. The Ninth Circuit reversed, holding that removal was inappropriate because the "heart and soul" of plaintiff's complaint had nothing to do with defendant's alleged benefit-avoidance motive for terminating him. 992 F.2d at 974. The court distinguished its holding from *Felton* by noting that Karambelas had alleged other reasons for his termination which had nothing to do with rights guaranteed by ERISA. *Id.* Similarly, a district court within this circuit held that where a plaintiff was pursuing a state law age discrimination claim, a single remark during testimony that defendant may have also been motivated by the cost of providing him with health benefits did not suddenly "federalize" his claim. *Donald v. Virginia Elec. and Power Co.,* 7 F.Supp.2d 694, 698 (E.D.N.C.1998).

 It is clear to the court, then, that where, as here, the "heart and soul" of plaintiff's state law cause of action seeks to vindicate a right not among those protected by ERISA, offhand speculation during a deposition as to a possible benefit-avoidance motive on the part of a defendant is insufficient to completely preempt a plaintiff's state law claim. Since Plaintiff's breach of employment contract cause of action only requires an inquiry into whether Defendants had a good faith belief

that the stated cause for Plaintiff's termination was actually a valid grounds for the termination, any speculation on Plaintiff's part as to Defendants' true motivation is of no relevance. Furthermore, even if it were relevant, this speculation would not provide grounds for complete preemption and removal, since, like the plaintiff in *Karambelas* and unlike the plaintiffs in *Tingey* and *Felton*, an examination of the record reveals several possible motives Defendants may have had in terminating Plaintiff.[7] Accordingly, Plaintiff's cause of action for breach of contract is not completely preempted by §§ 502 and 510 of ERISA, and therefore is not subject to federal subject matter jurisdiction.

■ The court next turns to Plaintiff's claim under the South Carolina Payment of Wages Act. S.C.Code Ann. § 41–10–10 et seq. "[T]he South Carolina Payment of Wages Act is remedial legislation designed to protect working people and assist them in collecting compensation wrongfully withheld." *Dumas v. InfoSafe Corp.*, 320 S.C. 188, 194, 463 S.E.2d 641, 645 (Ct.App. 1995). In his Complaint, Plaintiff has charged that "[b]y virtue of the breach of the afore-referenced employment contract and their failure to continue to pay monies to the plaintiff as wages under the terms of that contract, Defendants have willfully, wrongfully, and intentionally withheld wages due to Plaintiff in violation of" the Act. (Compl.¶ 15.) Essentially, Plaintiff's cause of action under the Act is alleging that Defendants wrongfully terminated his employment contract, and therefore are liable for three times the amount Defendants owe him as unpaid wages plus costs and attorney's fees pursuant to § 41–10–80(C) of the South Carolina Code.

■ However, just as with Plaintiff's state law breach of contract cause of action, his claim under the South Carolina Payment of Wages Act depends wholly on his allegation that Defendants lacked a good faith belief that their given reason for terminating him was legitimate. Since, as the court has previously explained, Plaintiff's breach of contract claim is not completely preempted by ERISA, this claim is also not completely preempted. Accordingly, Plaintiff's claim for relief under the Act is not subject to federal subject matter jurisdiction.

■ Finally, the court turns to Plaintiff's defamation claim. Plaintiff alleges that Defendants "maliciously published false statements to third parties which indicated that the plaintiff was unfit in his business or his profession." (Compl. ¶ 19.) Plaintiff alleges that Maness and Boston Scientific executives reported to third parties both inside and outside of the company that Plaintiff had engaged in inappropriate conduct with medical personnel while employed as a salesperson by Boston Scientific. When determining whether a state law cause of action is completely preempted by a federal law, "no preemption occurs if the state law claim requires proof of an extra element in addition to, or instead of, those elements that make up the preemptive federal claim." *County of Delaware v. Gov't Sys., Inc.*, 230 F.Supp.2d 592, 598 (E.D.Pa.2002). However, "[t]he extra element of the state cause of action must be one which changes the nature of the action so that it is 'qualitatively different' from a [federal] claim." *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F.Supp.2d 436, 442 (M.D.N.C.2005) (cita-

---

**7.** In the same deposition where Plaintiff mentioned a possible benefit-avoidance motive, he also speculated that he may have been fired due to personal animosity between he and Maness. The record also contains unsubstan-tiated allegations that Plaintiff may have acted inappropriately towards or entered into sexual relationships with customers or potential customers.

tion omitted). *See also Crow v. Wainwright,* 720 F.2d 1224, 1226 (11th Cir.1983) (holding that cause of action will not be preempted only if it differs "in a meaningful way."). In other words, "the core of both causes of action" must be the same. *Rosciszewski,* 1 F.3d at 230.

 Here, there can be no doubt that Plaintiff's defamation cause of action alleges an "extra element" that is simply not present in an ERISA cause of action. Under South Carolina law, the core basis of a defamation claim is the publication of a statement which "is false and tends to impeach a plaintiffs reputation." *A Fisherman's Best, Inc. v. Recreational Fishing Alliance,* 310 F.3d 183, 196 (4th Cir.2002). This is a claim completely different in kind from any claim which would be available to Plaintiff under ERISA, and the protection of employees or former employees from an employer's false statements which impugn the employees' reputations is not a field of law over which the federal government has exercised dominion. Accordingly, Plaintiff's defamation cause of action is "qualitatively different" from any available ERISA claim, and thus is not preempted by federal law.

Since all three of Plaintiff's state law causes of action are not completely preempted by ERISA, this court lacks subject matter jurisdiction over Plaintiff's complaint, and remand is therefore appropriate.

■ Plaintiff also asserts that this matter should be remanded to state court because Defendants' Notice of Removal was not filed in a timely manner. Because this court has decided that remand is appropriate based upon the lack of subject matter jurisdiction, it need not and does not address the issue of the timeliness of removal.

## CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Plaintiff Stuart Long's Motion for Remand is hereby **GRANTED.**

**AND IT IS SO ORDERED.**